Filed 1/15/21  Fisher v. Bird Rides CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MATT FISHER,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>BIRD RIDES, INC., et al.,<br><br>        Defendants and Appellants. | B302936<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV03082) |

        APPEAL from an order of the Superior Court of Los Angeles County, Terry Green, Judge.  Affirmed.

        Seyfarth Shaw, Eric M. Steinert, Jeffrey A. Wortman, Meagan Sue O'Dell and Amanda Lynn Mazin, for Defendants and Appellants.

        Shegerian & Associates, Carney R. Shegerian and Jill McDonell, for Plaintiff and Respondent.

————————————

Both the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) favor enforcement of valid arbitration agreements (*Moses H. Cone Hospital v. Mercury Constr. Corp*. (1983) 460 U.S. 1, 24–25; *Wagner Construction Co. v. Pacific Mechanical Corp*. (2007) 41 Cal.4th 19, 25–26), but "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration." (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.) Here, the trial court found plaintiff Matt Fisher did not electronically sign an arbitration agreement, and it denied the motion to compel arbitration filed by Bird Rides, Inc., Claudia Hellstrom, and Marwan Metwally (collectively, Bird), as well as Bird's subsequent motion for reconsideration. We affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

We present the evidence in the light most favorable to the judgment. (*Whiteley v. Philip Morris Inc*. (2004) 117 Cal.App.4th 635, 642, fn. 3.) Fisher applied for and accepted a position with Bird, an electronic scooter rental service, with a starting date of October 4, 2018. Fisher received an electronic link to an "onboarding" system, an electronic process in which new hires create accounts and complete electronic documentation related to their employment.

On October 3, 2018, Fisher completed onboarding documents including a general information form, a medical benefit acknowledgment form, an Internal Revenue Service W-4 form, a worker's compensation pamphlet and associated forms, an employment eligibility verification form, a nondisclosure

2

agreement, a payment options form, an authorization for release of personal data, and a notice concerning sick leave. Fisher was surprised not to see an arbitration agreement among the documents.

Fisher began his new job on October 4, 2018. Over the next weeks, Fisher made numerous safety complaints to Bird. On October 30, 2018, in response to one complaint, a Bird employee referred Fisher to a "Safety Acknowledgment" form she said he had signed during the onboarding process. Fisher had not seen or signed that document during onboarding. He logged back onto his electronic account to look for the safety acknowledgment and saw it had been added to his account. Fisher did not see an arbitration agreement.

Bird terminated Fisher's employment on December 3, 2018. The following day, Fisher logged into his account looking for his time records. Only a few documents were present in his account, and Fisher reviewed all of them. There was no arbitration agreement. Fisher checked his account two or three more times after this date and before January 8, 2019; at no time did he find an arbitration agreement in his account.

Bird requested his personnel file on January 8, 2019. Bird directed him to log into his account for document access. Fisher asked for his actual file, including documentation related to his termination, his engagement agreement, and the complaints he had made, none of which was available through his online account. Bird again referred Fisher to his electronic account, and when Fisher logged in, he found an arbitration agreement had been added to his account. The agreement showed Fisher's name electronically written on it as if he had signed it, but he had never seen it before.

3

On January 8, 2019, Fisher sent an electronic mail message to Bird stating that onboarding documents had been added after the fact to his online account. Fisher asked for time-stamped proof he had completed the documents. Bird never responded. Instead, later that day, Fisher discovered he could not log into his account. He was locked out of his account from that date forward.

Fisher sued Bird, alleging a variety of employment-related claims and negligence.

## I. Motion to Compel Arbitration

Bird moved to compel arbitration. Bird submitted evidence about the onboarding process through the declarations of two individuals, Cristina David and Mikayla Bruton. David described how the onboarding system generally operated. Individuals first create an employee account with a personally-selected password. They then view and complete two sets of forms; when they complete the first set they are sent to the second set, which includes the arbitration agreement. Only when they complete both sets of forms do they receive access to their worker dashboards. David declared it was "impossible" to go through the onboarding process without seeing and signing the arbitration agreement. Once a prospective employee completes the onboarding process, his or her information is forwarded to a human reviewer, who ensures the documentation is complete. David's testimony was a generic description of the onboarding process rather than conveying personal knowledge of Fisher's onboarding; she described documents and account displays as similar to what Fisher would have seen.

Bruton also described the standard onboarding process. Specifically with respect to Fisher, Bruton provided a copy of the

4

e-mail advising Fisher of his job offer and providing a link to create his account; the letter offering Fisher his position; emails that were automatically generated when Fisher accepted the position and when he had completed his onboarding documents; a copy of the arbitration agreement located in Fisher's online account with Fisher's name keyed in and a date of October 3, 2018; and copies of other onboarding documents located in Fisher's account.

In opposition to arbitration, Fisher submitted a declaration in which he described a different onboarding experience than the general process Bird had described. Fisher declared he never saw the arbitration agreement during his onboarding or employment, and he never signed it. It appeared in his file on the morning of January 8, 2019, more than one month after his employment had been terminated. Fisher produced an electronic mail message from January 8, 2019, in which he complained about new documents appearing in his online file. In this message, Fisher wrote that he had looked at his online account "multiple times today and throughout December and those onboarding documents were just added. Unfortunately those were not from hiring and added later." Fisher asked for "time stamped proof of those documents you just added, information and policies in them were not available or [intact] on hiring date. Seems very questionable." After he complained, Fisher declared, he was never able to log into his online account again.

The trial court ruled Fisher's negligence cause of action, based on injuries sustained when he was a customer of Bird and covered by a separate agreement with a signed arbitration agreement, was subject to arbitration. With respect to the claims arising from Fisher's employment, however, the court declined to

order the non-negligence causes of action to arbitration. The court described Bird's evidence "of how the computerized process that Plaintiff went through is supposed to work" and ruled Bird had provided evidence sufficient to meet its initial burden of authenticating the arbitration agreement it claimed Fisher had completed during the onboarding process. The burden of proof then shifted to Fisher, who "submitt[ed] a detailed and firm declaration that the process did not work as intended in his specific case and submitt[ed] contemporaneous writings which show that this has always been his position." Weighing the evidence, the court observed, "It might be true that the process generally works in the manner described by Defendants. But that does not *contradict* Plaintiff's statement that it worked differently in his specific case. Both sets of testimony can be true at the same time." The court noted the absence of evidence that "either explains what happened to Plaintiff specifically or directly and from personal knowledge negates the facts that Plaintiff describes." Such evidence, the court noted, could come through information technology investigation or from the human resources employee tasked with reviewing Fisher's files after the onboarding process was complete.

The court concluded, "Defendants have produced a generic description of how their process works and produced a document from their files with Plaintiff's name on it. Plaintiff has testified that the system did not work as it was designed in his case, that he did not sign the document, and that it appeared in his file only after he had already been fired." The court ruled that Fisher met his burden of proving he did not sign the arbitration agreement, and because the parties had not agreed to arbitrate, it denied the motion to compel arbitration of Fisher's employment claims.

## II.  Motion for Reconsideration

Bird moved for reconsideration of the court's order denying its motion to compel arbitration.  In conjunction with this motion, Bird provided the declaration of Justin Black, who had performed searches relating to Fisher in the company's computer records.  Black provided the results of his record searches, including the computer's records of when forms associated with Fisher's account were submitted and the computer-generated engagement records showing when Fisher opened his job offer, accepted the offer, began the onboarding process, and completed the onboarding process.  Black declared "[t]he type of information" he had obtained from his computer searches was "consistent with the information that exist[s] generally" based on the system's processes.  "[N]othing in the data" from the computer records suggested any deviation from the standard onboarding process with respect to Fisher.  Black also described and submitted computer records showing when the arbitration agreement was inserted into the overall onboarding system, explained that queries on Fisher's online dashboard brought up documents including the arbitration agreement, and provided an example of the worker dashboard and a list of documents provided to California workers during the onboard system process.

The court found Bird's ostensibly new evidence was available to Bird in conjunction with the original motion.  Nevertheless, because this was a developing area of the law and Fisher's position may not have been clear to Bird until the opposition was filed, Bird had offered a satisfactory explanation for the failure to produce this evidence at an earlier time However, the new information did not directly address the central issue of whether the computer program had worked as

7

intended in this particular case.  The court stated, "While it is a good thing to now have this additional evidence in the record, it does not change or eliminate any of the basic problems with this motion."  The court explained, "Defendants' original motion required the court to assume that the electronic onboarding process worked correctly.  The motion for reconsideration still requires that assumption.  Providing the specific computer records that correspond to Plaintiff does nothing to prove or disprove Plaintiff's assertion that those records were generated in error."  The court denied the motion for reconsideration.  Bird appeals.

## DISCUSSION

I.     **Standard of Review**

Although the standard of review typically applicable to review of a court's ruling on a motion to compel arbitration is the substantial evidence standard (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 683), Bird argues this court should review the trial court's ruling de novo because the trial court applied the wrong legal standard in determining whether the parties agreed to arbitrate.  According to Bird, the court considered "factors extraneous to the execution and adoption" of the arbitration agreement, specifically its concerns about constitutional rights involved in compelling arbitration, rather than applying the procedures laid out in Civil Code section 1633.9 for determining whether an electronic signature is authentic.

Bird's argument that the court applied the wrong legal standard is based on comments the trial court made at argument about the seriousness of the constitutional rights at issue.  While

8

the court did comment on the constitutional rights implicated in ruling on motions to compel arbitration, Bird focuses on these statements to the exclusion of the court's clear and thorough written orders delineating the basis for its rulings: Bird asks this court to disregard the court's written explanation of its reasons for refusing to compel arbitration and to conclude the court actually reached its decision on impermissible grounds. This we may not do. A judge's comments at oral argument do not supplant, and may not be used to impeach, its final order. (See *Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1206 [court's oral commentary is merely an informal statement of its views; the written order constitutes the ruling]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633.)

The trial court's orders demonstrate the court did not refuse to compel arbitration because of its consideration of constitutional rights; it decided not to compel arbitration because it found persuasive Fisher's evidence he did not enter into the arbitration agreement. Bird has not established the court applied the wrong legal standard, nor has it demonstrated a de novo standard of review, rather than the substantial evidence standard, should be applied here.

## II.     **Challenges to the Sufficiency of the Evidence**

A party petitioning to compel arbitration bears the burden of establishing the existence of a valid agreement to arbitrate by a preponderance of the evidence, and the party opposing the petition has the burden of proving by a preponderance of the evidence any fact necessary to its defense. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) Bird argues the evidence was insufficient to

9

support the trial court's ruling Fisher did not electronically sign the arbitration agreement. Under the substantial evidence standard of review, "we view the evidence in the light most favorable to the prevailing party, and then consider whether this evidence is sufficient to allow a reasonable trier of fact to reach the challenged decision." (*Sanchez v. Martinez* (2020) 54 Cal.App.5th 535, 548.) The evidence was sufficient to support the trial court's order.[1]

Civil Code section 1633.9, subdivision (a) provides an electronic record or signature is attributable to a person if it was the act of the person. "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a).) Courts determine the effect of an electronic record or signature attributed to a person "from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." (*Id.*, subd. (b).)

---

[1] Bird does not claim the contract here "eviden[ces] a transaction involving commerce" (9 U.S.C. § 2) such that the FAA would apply. The party seeking to apply the FAA "bears the burden to present evidence establishing a contract with the arbitration provision affects one of . . . three categories of activity" related to or involving interstate commerce. (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 238; see *Lane v. Francis Capital Management LLC, supra*, 224 Cal.App.4th at p. 687.) The failure to present such evidence "renders the FAA inapplicable." (*Carbajal*, at p. 238; *Lane*, at p. 688.) Accordingly, we do not consider federal law in conducting our review.

Bird presented evidence of how the onboarding system is designed to work, computer-generated records specific to Fisher's onboarding, and Black's declaration that the records yielded no indication the system had not worked in its prescribed manner during Fisher's onboarding.[2]  Fisher presented evidence he did not sign the arbitration agreement and it, like other documents, appeared in his online account after the fact with an electronic signature he did not provide.  The trial court found Fisher's evidence convincing, particularly his contemporaneous complaint about finding new onboarding documents in his account after his termination, and it concluded that while Bird had clearly demonstrated how its system was supposed to work, Fisher had

---

[2]     Some of this evidence was presented in conjunction with Bird's original motion to compel arbitration, and some was submitted with its motion for reconsideration.  Fisher contends Bird could have presented the evidence submitted with the motion for reconsideration when it filed its reply brief in support of the original motion, and therefore the motion for reconsideration failed to meet the requirements of Code of Civil Procedure section 1008.  " 'Section 1008, subdivision (a) requires that a motion for reconsideration be based on new or different facts, circumstances, or law.  A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time.' [Citation.]  A trial court may not grant a party's motion for reconsideration that does not comply with section 1008." (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 312.)  While it appears the court would have acted within its discretion if it had rejected the motion for reconsideration on the ground that Bird failed to demonstrate its evidence could not have been presented previously, we need not review the basis for the court's rejection of the motion for reconsideration in order to resolve the issues presented on appeal.

demonstrated that in his case it did not work as designed. The evidence before the trial court permitted this conclusion. "We look at the evidence in support of the successful party, disregarding any contrary showing, and we resolve all conflicts in favor of the respondent, indulging in all legitimate and reasonable inferences to uphold the verdict if possible. [Citation.] When two or more inferences can reasonably be deduced from the facts, we do not substitute our deductions for those of the finder of fact. [Citation.] We must affirm if substantial evidence supports the trier of fact's determination, even if other substantial evidence would have supported a different result." (*Canister v. Emergency Ambulance Services, Inc.* (2008) 160 Cal.App.4th 388, 394.)

Relying on *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, and similar cases, Bird argues it made an evidentiary showing consistent with decisional law concerning the nature of the showing the proponent of an electronically signed arbitration agreement must make. There is no dispute the evidence Bird provided is evidence of the type California courts look to when considering contested electronic signatures. But none of these cases stands for the proposition that once a party produces evidence of this nature, a trial court is bound to find the electronic signature the act of a person and is foreclosed from considering other evidence bearing on whether the alleged signatory did in fact sign the agreement. Narrowing the inquiry in this manner would contravene the statutory requirement that the court determine the effect of an electronic attributed to a person "from the context and surrounding

12

circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any." (Civ. Code, § 1633.9, subd. (b).)

Repeatedly dismissing Fisher's evidentiary showing as "a self-serving declaration" and describing its own evidence as "overwhelming," Bird concludes the "weight and character" of its evidence was such that the court "could not reasonably reject it." The court, however, did not reject Bird's evidence. It accepted the evidence as true, and ruled this was sufficient to meet Bird's initial burden to authenticate the document; however, it found Fisher's evidence he had not signed the agreement to be persuasive. " 'We do not second-guess the court's credibility calls or reweigh the evidence.' " (*Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 670.)

Bird labels Fisher's evidence "red herrings" and criticizes Fisher for not submitting evidence establishing a computer error had occurred. It characterizes Fisher's evidence, provided in opposition to the original motion to compel arbitration, as "irrelevant information that failed to address" the evidence Bird provided with its motion for reconsideration. Citing to evidence Fisher provided in his opposition to the motion to compel arbitration, Bird points out Fisher's contemporaneous complaint to Bird about new documents being added to his onboarding account did not specifically state an arbitration agreement was added, and it argues the complaint "does not rebut or in any way address" a declaration Bird submitted with its motion for reconsideration. Bird, however, fails to explain how Fisher's evidentiary showing in response to the motion to compel arbitration can be faulted for failing to address evidence Bird did not present until it moved for reconsideration.

13

Bird contends "[n]one of the assertions or documents that Fisher presented show that Fisher did not sign the Arbitration Agreement, nor do they constitute evidence—substantial or otherwise—that a computer glitch or error occurred that caused his electronic signature to be affixed to the Arbitration Agreement without his knowledge or consent and thereafter placed in his account." As to the first point, Bird is incorrect: in his detailed declaration Fisher described the course of the onboarding process, distinctly recalled his surprise that there was no arbitration agreement and testified he had never signed any arbitration agreement, but one appeared in his file after his termination; this, along with Fisher's supporting evidence demonstrating he had complained at the time that documents had been added to his account after the fact, did constitute evidence tending to show he did not sign the arbitration agreement. The trial court credited this evidence, and for the purposes of our review, so must we. " ' "Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below." ' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

As far as proving a computer error occurred, Bird provides no authority, and we are aware of none, requiring a party who denies he or she entered into an arbitration agreement to provide evidence establishing the mechanism by which the agreement he or she denies signing was created and placed in his or her electronic account. Nor is exactly why or how the arbitration agreement ended up in Fisher's account necessary to the court's

14

rulings:  While the court believed computer error was the probable and obvious explanation of why Bird's records indicated Fisher had signed the agreement when Fisher maintained he had not, the factual issue the court resolved, and the finding we review on appeal, is that Fisher did not enter into the arbitration agreement.  As we have previously explained, this finding was supported by substantial evidence.  Bird has failed to demonstrate error.

## DISPOSITION

The order is affirmed.  Respondent shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

BIGELOW, P. J.

WILEY, J.

15