[No. B024184. Second Dist., Div. Two. Dec. 30, 1986.]

TIFFANY CAROL HARRIS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MANSOOR MIRSAIDI et al., Real Parties in Interest.

COUNSEL

Alfred Breckler for Petitioners.

No appearance for Respondent.

Joel Bruce Douglas, Bonne, Jones, Bridges, Mueller & O'Keefe, Robert C. Powers and Rushfeldt, Shelley & McCurdy for Real Parties in Interest.

OPINION

THE COURT.*—This proceeding presents the unusual situation of a plaintiff seeking to compel arbitration of a medical malpractice claim over the defendant physician's objection that he prefers trial by jury. Petitioners seek a writ of mandate directing the trial court to compel the physician to participate in binding arbitration.

---

*Before Roth, P. J., Gates, J., and Fukoto, J.†

†Assigned by the Chairperson of the Judicial Council.

Petitioners, a mother and daughter, filed the underlying malpractice action in superior court against a physician (Dr. Mirsaidi), a hospital corporation (Maxicare Medical Centers, Inc.), and a second corporation (Maxicare Health Plans, Inc.) which is the holding company of the hospital corporation and of another corporation (Maxicare) licensed in California to arrange the delivery of prepaid health care services to members. Maxicare was not named as a defendant; neither was Hawthorne Community Medical Group, Inc. (hereinafter Hawthorne), the professional corporation through which Dr. Mirsaidi practiced. The complaint alleges negligence before and during the daughter's birth, resulting in personal injuries.

Plaintiffs were enrollees in the Maxicare prepaid health services program, as a benefit of the father's employment. At the time of enrollment, he was furnished with and signed a membership application form. This application contained the following printed statement: "I agree that any claim asserted by a Member . . . against Maxicare, Hawthorne Community Medical Group, Inc., [three other entities], their employees or other contracting health professionals, pharmacies, or their employees for bodily injury to or death of a member, is subject to binding arbitration." Another document, called a Maxicare Service Agreement (a copy of which, the record shows, is customarily given to members at the time of their enrollment) provides: "[I]f any dispute, controversy or claim shall arise between the Subscriber or Family Unit Member . . . and Maxicare, its employees or contracting providers and their agents or employees . . . the same shall be referred to three arbitrators . . . . [¶] . . . The decision of the majority of the arbitrators shall be final and binding on both parties. . . ." In their answers to the complaint, Dr. Mirsaidi and the holding company—both are represented by the same attorney—raised binding arbitration as affirmative defenses, pleading that "the Superior Court action should be stayed, pending arbitration of the dispute."

Over 20 months after filing its answer, defendant hospital moved to compel arbitration of the controversy between it and plaintiffs. The motion was granted. Plaintiffs then moved for an order compelling Dr. Mirsaidi and the holding company to participate in the arbitration. In response, the holding company put on record its willingness "to voluntarily submit plaintiffs' claims against it to arbitration, along with the arbitration between plaintiff and the hospital." Dr. Mirsaidi, however, opposed the motion.

The trial court granted the motion with respect to the claim against the holding company, based on its expressed willingness to arbitrate. But it denied the motion to compel Dr. Mirsaidi to participate in binding arbitration, reasoning that he was not a party to the arbitration agreement. This

petition followed. We hold that Dr. Mirsaidi is bound by the arbitration clause signed by the father when he enrolled in the health plan.

Code of Civil Procedure section 1281.2 requires the trial court to order arbitration of a controversy if it determines that there is an agreement to arbitrate the controversy. ■ An action to compel arbitration is, in essence, an action to compel specific performance of a contractual agreement to arbitrate. (*Meyer* v. *Carnow* (1986) 185 Cal.App.3d 169, 174 [229 Cal. Rptr. 617].) We have no doubt that the enrollment form arbitration clause, which specifically named Hawthorne and its contracting health professionals, gave Dr. Mirsaidi the contractual right to compel arbitration of a malpractice claim against him. The issue here is whether there is merit to the doctor's contention that the patient could nonetheless not compel him to arbitrate, because only the patient executed the enrollment form. In effect, under this proposed construction of the arbitration agreement it grants an option to the employees and other contracting professionals of Hawthorne to choose arbitration or litigation and to impose that choice on any plaintiff.

Not many reported cases have involved arbitrations with persons who did not sign arbitration agreements. ■ It is well established that a nonsignatory beneficiary of an arbitration clause is entitled to require arbitration. (*Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826]; *Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999 [119 Cal.Rptr. 130]; *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 671-672 [97 Cal.Rptr. 811].) Whether a nonsignatory beneficiary can be forced to arbitrate is a closer question. Under the facts of this case, however, we have no difficulty in concluding Dr. Mirsaidi was bound by the arbitration clause.

■ According to Dr. Mirsaidi's deposition testimony, Hawthorne was a professional corporation. He became associated with Hawthorne in 1975; at that time he joined eight other physicians with various specialties in a group practice at Hawthorne. The record does not show whether Dr. Mirsaidi was an officer, director, or shareholder of Hawthorne. It does show that he was its employee and that he provided medical care to Hawthorne's patients, including plaintiffs. This relationship is sufficient to bind Dr. Mirsaidi to the arbitration agreement which named Hawthorne.

Our conclusion is supported by the holding of *Berman* v. *Dean Witter & Co., Inc., supra,* 44 Cal.App.3d 999, 1004. There a husband was compelled to arbitrate his dispute with a securities broker despite his objection that he was not a party to the arbitration agreement signed by his wife when she opened her account with the broker. The husband's claim against the broker

arose from a purchase he made for the wife's account; the court held that in making the purchase he was acting as the wife's agent, a status which bound him to the arbitration agreement. Here, plaintiffs were patients of Hawthorne, which, as a professional corporation, could render professional medical services to them only through its employees. (See Corp. Code, § 13405.) Acting as Hawthorne's employee and on its behalf, Dr. Mirsaidi rendered medical care to plaintiffs. In so doing he was subject to Hawthorne's obligations under the arbitration agreement—just as petitioners, also nonsignatories, were bound by the father's agreement to arbitrate.

Familiar principles of contract law also support our decision. A third party beneficiary of a contract can gain no greater rights under that contract than the contracting parties. (*Zahn* v. *Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 513 [129 Cal.Rptr. 286].) Dr. Mirsaidi was a third party beneficiary of the contractual provision requiring arbitration of members' claims against "employees or other contracting health professionals" of Hawthorne. Since Maxicare and Hawthorne, the contracting parties which procured this benefit for him, waived their rights to trial and agreed to arbitration instead, Dr. Mirsaidi's rights are no greater.[1]

Further, the voluntary acceptance of the benefit of a transaction constitutes consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting. (Civ. Code, § 1589.) Here, Dr. Mirsaidi obtained patients through enrollments in the Maxicare health plan. His acceptance of this benefit necessarily entailed acceptance of the agreement that members' claims would be subject to binding arbitration.

Courts have often indicated their concern that binding arbitration should not be imposed if the use of arbitration would be contrary to a party's reasonable expectations or if any loss or unfair imposition would result. (E.g., *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d 668, 672.) We have no fear that this is such a situation.

This is a proper case for issuance of a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) All parties were informed by order that this court was considering issuing a peremptory writ in the first instance. The case having been fully briefed,

---

[1]We have no doubt Hawthorne was a party to the agreement contained in the enrollment form. The form bore a printed notation that it was a January 1979 revision; the father signed it in July 1980. The evident failure of Hawthorne to procure removal of its name from the form during that span of time sufficiently indicates the apparent authority of the person presenting the form for signature to bind Hawthorne to its contents.

issuance of an alternative writ would add nothing to the exposition of the issues.

Let a peremptory writ of mandate issue, directing respondent court to vacate its order of September 3, 1986, denying petitioner's motion to compel defendant Mirsaidi to participate in arbitration, and to enter a new and different order granting the motion.